RichardsoN, Ch. J.,
delivered the opinion of the court:
' This suit grows out' of what, in departmental language, is-called “lap service;” that is, distinct service over a trunk line-by two or more railway companies having connecting roads.
The Revised Statutes, section 4002, as amended, authorize- and direct how the Postmaster-General shall adjust compensation to railroad companies for carrying the mails.
“ Sec. 4002. The Postmaster-General is authorized and directed to readjust the compensation hereafter to be paid for the-transportation of mails on railroad routes upon the conditions- and at thé rates hereinafter mentioned:
“ First. That the mails shall be conveyed with due frequency and speed; and sufficient and suitable room, fixtures, and furniture, in a car or apartment properly lighted and warmed, shall be provided for route agents to accompany and distribute-the mails.
“ Second; That the pay per mile per annum shall not exceed the following rates, namely:
“ On routes carrying their whole length an average weight-of mails per day of two hundred pounds, fifty dollars;
a Five hundred pounds, seventy-five dollars;
“ One thousand pounds, one hundred dollars;
“ One thousand five hundred pounds, onehundred and twenty-five dollars ;
“ Two thousand pounds, one hundred and fifty dollars ;
“ Three thousand five hundred pounds, one hundred and, seventy-five dollars ;
“ Five thousand pounds, two hundred dollars, and twenty-five dollars additional for every additional two tliousandpounds.. The average weight to be ascertained, in every ease, by the ac *387 tual weighing of the mails for such a number of successive working days, not less than thirty, at such times, after June thirtieth, eighteen hundred and seventy-three, and not less infrequently than once in every four years, and the result to be stated and verified in such form and manner as the Postmaster-General may direct.”
Amendment by act of July 12, 1876, Ch. 179 (1 Supplement to E. S., 2d ed., p. 110) :
“ Be it enacted, die., That the Postmaster-General be, and he is hereby, authorized and directed -to readjust the compensation to be paid from and after the first day of July, eighteen hundred and seventy-six, for transportation of mails on railroad routes by reducing the compensation to all railroad companies for the transportation of mails ten per centum per annum from the rates fixed and allowed by the first section of an act of March 3, 1873, now E. S., § 4002, as above, for the transportation' of mails on the basis of the average weight. * * *”
Amendment by act of June 17,1878, Oh. 259 (1 Supplement to E. S., 2d ed., p. 187, par. 3):
“ And provided further, That the Postmaster-General be, and he is hereby, authorized and directed to readjust the compensation to be paid from and after the first day of July, eighteen hundred and seventy-eight, for transportation of mails on railroad routes by reducing the compensation to all railroad companies for the transportation of mails five per centum per an-num from the rates for the transportation of mails, on the basis of the average weight fixed and allowed by the first section of an act [of July 12,1876, Oh. 178, as above].”
Further amendment by act of March 1,1881, Oh. 96 (1. Supplement, 2d ed., p. 319, par. 3) :
“ And hereafter when any railroad company fail or refuse to provide railway post-office cars when required by the Post-Office Department, or shall fail or refuse to provide suitable safety heaters and safety lamps therefor, with such number of saws and axes to each car for use in case of accident as may be required by the Post-Office Department, said company shall have its pay reduced ten per centum on the rates fixed in section four thousand and two of the Eevised Statutes, as amended by act of July twelfth, eighteen hundred and seventy-six [as first above set out], and as further amended by the act of June 17, 1878 [as last above set out].”
Where two or more railroad companies run trains over the same tracks, and the Postmaster-General deems that the *388 needs of the mail service do not justify the expenditure of more than the maximum if all the services are performed by one company, it has long been his practice to allow a second company to perform part of the service with the understanding that its compensation should be such per mile as the pay of the first company would be increased if it carried all the mails.
He did so in this case. The following correspondence took place between the parties:
“ WASHINGTON, D. C., Sept. 15,1883.
“Sib: An order has been made curtailing route 31009 to end at Sierra Blanca (n. o.), decreasing distance 91.5 miles, and pay at the rate of $8,058.40 per annum. This course is necessary, as the service on route 31039 is to be extended to El Paso, Texas, and the Department objects to paying two companies for service on the same piece of road at the maximum rates.
“If your company is willing the Department will continue (the service on your road between Sierra Blanca .(n. o.) and El Paso with the understanding that your company will be paid for the service only as much as the weight of mails on your road would increase the pay of the Galveston, Harrisburg and. San Antonio By. Co. if all the service was performed by that company.
“Yery respectfully,
“B. A. Elmeb,
“ Second Asst. P. Jf. General.
“S. Guthbie, Esq.,
“ Agent Texas a/nd Pacific By. Go.”
“Washington, D. C., Sept. 37,1883.
“Sib: Beferring to your letter of the 15th instant curtailing route $31909,1 am advised by the geni, transportation manr. that the company desires to continue carrying the mails on its trains between Sierra Blanca and El Paso, as suggested by you.
“Yery respectfully,
“S. Guthbie,

uBepg. Mo. Pac. By. Go., Opg. Tex. and Pac. By.

“Hon. B. A. Elheb,
“ See. Asst. P. M. Gen., Washington, D. G.”
*389 “POST-OFFICE DEPARTMENT,
“Office of the Second Assistant
“ Postmaster-General,
“Bailway Adjustment Division,
“ Washington, D. 0., Sept. 28,1883.
“Sir: An order has been made restoring the service on route 31009, between Sierra Blanca (n. o.) and El Paso, with the understanding that the rate of pay between those points will be as much as the weight of mails will increase the pay of the Galveston, Harrisburg and San Antonio Ey. Co. if the service was performed alone by that company.
“Very respectfully,
“H. D. Lyman,

uActg. Second P. M. General.

“S. Guthrie, Esq.,
“ Agent Texas a/nd Pacific By. Go., Washington, JD. G.n
These letters, containing an offer on one side and an acceptance on the other, clearly made a contract between the parties, and no other contract was subsequently entered into.
The claimant seeks to escape from the contract on the ground that a protest was made against it.
The business was done and payments were made according to the contract to the satisfaction of both parties until November 23, 1888, when the company brought suit in this court to recover the statute maximum.
On the 17th of April, 1889, the claimant, by its attorney, addressed a letter to the Department, set out in finding v, stating, among other things, that it is “ entitled, as your petitioner believes, to the full statute rates,” adding “ it must be conceded that the method of adjustment of the pay for services between Sierra Blanca and El Paso is unknown to the law,” and that it “protests against the continuance of this unjust discrimination and asks ior a modification of the order of adjustment.”
It seems to be assumed by the claimant that the statutes fix an absolute rate of compensation, while in point of fact they fix only the maximum below which the Postmaster-General is authorized to make such contracts as he deems the needs of the mail service may justify.
The company was under no obligation to perform this service for any agreed period and could have refused to take the mails at any time. Complaining of the injustice of the contract did not annul it nor make another and different one in its place.
*390 If the company had refused to perform the service the Postmaster-General might have acceded to the claimant’s terms, or he might have discontinued the service and have turned the mails over to the Galveston, Harrisburg and San Antonio Railway Company, but he had a right to the option, just as the claimant had the option to carry the mails on the terms agreed upon or to refuse to carry them at all.
The contract could not be changed by complaints and protests.
It would be a novel principle to introduce into the law of contracts that a contractor for continuous service at agreed prices can raise the price by complaining of the injustice of the contract, while still performing the service and regularly taking pay according to contract price.
But the letter of the company was not a protest, such as is admitted to avoid the otherwise legal effect of an act done. It was a mere complaint, terminating with a request for a modification of the order of adjustment.
Nor was the bringing of suit November 23,1888, a protest.
A suit is a demand and notice of an existing claim, and not a protest against what may occur in the future. Such are the decisions cited by the claimant’s learned counsel; as, for instance, in the case of Nixon v. Long (11 Iredell, 427), it was held that when one had a cause of action accruing after demand the suing out of a writ for that cause was a-demand. It is nowhere held that a suit for one cause of action is a protest upon which may be founded another suit for subsequent causes even growing out of the same contract, nor sufficient to avoid the legal effect of subsequent receipts of payments according to contract for services thereafter voluntarily performed.
Besides, if that were a -protest such as claimed, it was waived by the letter of the claimant’s attorney of date June 15, 1889, set out in finding v, nearly seven months after the institution of the suit, in which he withdraws this letter of April 17, 1889, above referred to, “ asking for a more equitable adjustment of the pay,” and adding, “as the withdrawal of my letter will restore the status quo, I trust the pleasant relations heretofore existing between the Department and the company may continue indefinitely.” .
What was the status quo other than the contract between the parties set out in finding ii, according to which the claimant *391 bas been, paid? It was that or nothing, for there was no other status quo to which those words could refer. The contract was renewed and all complaints and protests, whatever they might have been, were thereby waived.
This is clearly so, because that letter was in reply to two letters from the Department, May 16 and June 7, 1889, in the first of which the company was informed, after stating the facts, that—
“Therefore the Department respectfully declines to accede to your request. If the Texas and Pacific Bailway Company is willing to continue to accept the compensation fixed, to which it consented, the Department would like to know it at an early date.”
In the second letter, under date of June 7, referring to letter of May 16, it is said:
“In that letter the Department inquired whether the company intends to persist in its demand. Twenty-one days have •elapsed and the Department has not been favored with a reply to its inquiry. It is important to the Texas and Pacific Bail-way Company and the Department that a reply be forwarded without delay. Therefore the Department will await a reasonable time for a reply from you before taking decisive action in this matter, but as three weeks have already elapsed the answer should not be deferred.”
The claimant’s attorney a few days later sent his letter, above referred to, in which he withdraws his complaints and protest, restores the status quo, and trusts that the pleasant relations between the parties may continue indefinitely.
The Post-Office Department has proceeded with persistent and commendable efforts to prevent any misunderstanding with the claimant as to the relations between them, and in that we think it has law on its side.
In our opinion the company is bound by the contract set out in finding n and renewed by the correspondence set out in finding v. Having been paid in accordance with the contract, the claimant has no cause of action, and the petition is dismissed.