Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
In Chicago & Northwestern Ry. Co. v. United States, 104 U. S., 680, it was held that where the railroad company had a contract for a term of four years at a stipulated price to carry the mails the price could not be reduced during the *432 term by the Post Office Department without the former’s consent. That road was a land-grant road; and in Chicago, M. & St. P. Ry. Co. case, 104 U. S., 687, the same ruling was made. In each of said cases an attempt had been made by the Postmaster General to reduce the compensation stated in the contract because of the direction to do so contained in the act of July 12,1876. The court held that they could recover the price stated in the contract.
In Eastern Railroad Co. v. United States, 129 U. S., 391, a reduction had been made by the Postmaster General in the compensation stated in the contract because of the act of June 17,1878, and it was held that the company could not recover the difference between what was paid to it upon the reduced basis and what it would have received under the original basis of compensation. The court distinguishes the case from that of Chicago, etc., Ry. Co., supra, saying (p. 396) : “That case differs from the present one in the important particular that in the former the company bound itself to carry the mails during a certain period, and, consequently, its acceptance from time to time during that period of less than it was entitled to demand did not prejudice its right to claim what was legally due under its contract, whereas in the present case the company could have declined to accede to the readjustments of rates when they were made.”
It was declared that this court had properly said that the order for the reduction under the act of 1878 and the notice thereof to the company “constituted an offer on the part of the Postmaster General which the claimant might decline or accept at his pleasure,” and the Supreme Court added: “Having received the reduced compensation without protest or objection it may be justly held to have accepted that offer.” (Opinion, p. 396.)
The facts of the instant case are not materially different from the facts of the Eastern Railroad case, as stated by Mr. Justice Harlan, except in the particular that in the Eastern Railroad case the claimant made no protest or objection to the reduction in the compensation and received the same. In the instant case there was a protest, the effect of which is to be considered later. The principle upon which the East- *433 em Railroad case proceeds is that the contract between the parties provided that the compensation could be readjusted and therefore that “ it can not be said that the reduction of 5 per cent was a violation of that contract, for, according to its terms, the parties agreed that the rates fixed * * * were subject to such future orders as the Postmaster General might make.”
In the instant case, a “ distant circular ” had been sent by the Postmaster General to plaintiff, who signified its willingness, by an indorsement thereon duly returned to the Post Office Department, to transport the mails as follows: “In case the Post Office Department authorizes the transportation of mails over this line, or any part of it, the railroad company agrees to accept and perform the service upon the conditions prescribed by law and the regulations of the department.” After the return of the distance circular with the information it called for and the said indorsement thereon by the plaintiff company, the Postmaster General made an order and gave a notice to plaintiff stating that “ the compensation for the transportation of mails, etc., on route No. 107,108, between Hoboken and Buffalo, has been fixed from July 1, 1905, to June 30, 1909,” under certain named acts, “upon returns showing the amount and character of the service,” at á designated rate per annum, and it was added, in both the order and notice, that “ This adjustment is subject to future orders and to fines and deductions and is based on a service of not less than six round trips per week.” There were two routes on plaintiff’s lines, and the orders and notices were substantially the same as to both.
The distance circular, and plaintiff’s said indorsement thereon, taken in connection with the orders and notices of the Postmaster General stating the compensation, and the action of plaintiff thereafter in carrying the mails and receiving the said compensation, evidence the contract between the parties. Until the rates were stated and acted upon there was no acceptance by the plaintiff of the offer of the Government, and when acted upon the rights of the parties became fixed, subject to the terms of the offer itself, which were, as has been said, that the compensation would be sub *434 ject to readjustment. Reserved as it was in the offer, the right of future adjustment was reserved in the contract of which the offer was a part, because what we designate as the “ offer ” was the order and notice of adjustment under which plaintiff acted, and, by acting under it, accepted. Prior to such order and notice in 1905 the plaintiff had indicated a willingness to carry the mails “ in case ” the department authorized it, and the order and notice, or some similar action by the department, was essential to convert the conditional expression by the plaintiff into an actual undertaking; but the plaintiff’s indorsement on the distance circular did not say dr imply that the plaintiff would be bound to transport the mails at a price unreasonably low or at any price. It had the option of refusing to carry the mails at the rate fixed subsequently in 1905. Eastern Railroad case, supra.
In the instant case the Postmaster General reduced the compensation stated in said orders and notices, because of the direction contained in the act of March 2,1907, 34 Stats., 1212, which is similar to the act of 1878 considered in the Eastern Railroad case.
The contracts in the instant case contain the same reservation in effect as were involved in that case. As was there said (p. 395): “ This reservation of power in the Postmaster General opened the way for him to exercise the authority conferred and to conform to the direction given by the act of 1878,” or, in the instant case, by the act of 1907.
We are governed by the decisions of the Supreme Court, and the Eastern Railroad case controls the instant case unless the plaintiff’s protest be held to make a difference. It is well established that a contract may contain an express provision that one or either party may terminate such contract at his option. 3 Paige Contr. Sec. 1360. It may be conceded that the parties contemplated that the arrangement effected in 1905 would probably continue for four years at the stated compensation, but the right was nevertheless reserved to make readjustments by future orders. The “future order ” came in the act of 1907, and when acted upon by the department the readjustment was made as Congress directed that it should be made. We can not assent to the argument that the act of 1907 was intended to apply only *435 to roads whose contracts expired by limitation after its enactment. Its terms do not admit of that construction. It was designed to make a reduction in the compensation being then paid to any and all roads. It could not lawfully be applied to roads which had contracted with the Postmaster General for a definite period at a fixed compensation. Chicago, etc., Ry. Co. case, 104 U. S., 680. It could be applied to contracts with roads containing the reservation of the right to readjust the compensation by future orders. Eastern Railroad case, supra. Plaintiff’s contract came within the latter class.
The option thus secured to the Government did not have the effect, however, of requiring the railroad company to carry the mails at the reduced rate. Its obligation was to carry them at the compensation stated in the orders and notices of 1905, and when reduced under the authority and direction of the act of 1907 it was free to refuse to go forward under the reduced rates. As said by Mr. Justice Harland in the Eastern Railroad case:
“ We do not mean that the railroad company was bound to continue the carrying of the mails if subsequent changes in the rates were unreasonable or did not meet with its assent. On the contrary, it was at liberty when the five per cent reduction was made to discontinue their transportation on its cars.”
In fact, that right was admitted in the correspondence which ensued between the Postmaster General and the general attorney of the company when the latter was protesting against the former’s action.
The Postmaster General in his letter of November 25, 1907, after stating the position of the Government under the terms of the contracts, which he insisted reserved authority to make the reduction, said:
“It is open to the company to accept the terms of the readjustment and continue the service or decline those terms and cease the performance of service.”
It is, however, insisted by plaintiff that if the act of 1907 could be put into effect upon plaintiff’s road at all, the ma.il.g should first have been reweighed. We think it clear that the department had a right to reweigh the mails, but it did not *436 do so, nor did plaintiff demand that it should. It would have been perhaps a practical impossibility to reweigh the mails on all the railroad mail routes in the country where there were contracts similar to that of plaintiff in any reasonable time. We fail to see how the fact that the mails were not reweighed affects the plaintiff’s case. “ Having the right reserved in the contract to readjust the rates, the Postmaster General proceeded to do so.” “ Chief Justice Richardson, speaking for the Court of Claims, properly said that the order for the reduction under the act of 1878 and the notice thereof to the company constituted an offer on the part of the Postmaster General which the claimant might decline or accept at his pleasure.’ ” Per Mr. Justice Harlan in Eastern Railroad case (p. 396). The failure to weigh the mails anew in accordance with the act of 1873 and acts supplementary thereof did not affect the right reserved in the contract and exercised by the Government. It made an offer which plaintiff was free to accept or refuse. The effect of said action by the Government was necessarily a termination of the compensation as stated in 1905, there being no term in the contract which constituted a condition that the mails be reweighed before an adjustment under future orders could be made. What then was the effect of plaintiff’s protest and objection? Plaintiff was duly informed of the reduction. It was tendered the option which it already had of declining the offered terms, but it insisted upon its rights under the contract of 1905. Speaking through its general attorney, it said to the Postmaster General in its letter of December 12:
“ I fail to appreciate your reasons, if you are right in your view of the law, in declining to assent to our willingness to carry the mails for restated compensation provided our rights under the contracts are not prejudiced thereby.”
To which the Postmaster General replied:
“ The service may be continued by you, but it must be with the distinct understanding that there is no agreement on the part of the department to pay for the same at a higher rate than that fixed by the readjusting order issued in accordance with the act above referred to. There is no objection, however, to your reserving any legal right which you may have under the contract existing prior to July 1,1907, and resort *437 ing to legal procedure for the determination of the same if you choose to do so.”
Manifestly, plaintiff’s objection to the readjustment could not keep in effect the adjustment of 1905 if the department was authorized by the contract to modify it, and did so in accordance with the contract. Texas & Pac. Ry. Co. case, 28 C. Cls., 379, 390. That it could properly do so and that it did effectually make a readjustment are sustained by the ruling in the Eastern Railroad case. The contract reserved the right and the Postmaster General duly exercised it. Such being the case, “ it can not be said that the reduction of five per cent (or the smaller reduction) was a violation of that contract.” When, therefore, plaintiff expressed a “willingness to carry the mails for restated compensation, provided our rights under the contracts are not prejudiced thereby,” and the Postmaster General replied as above stated, it is clear that his protest and objection went no further than an assertion that the contract of 1905 continued in force, notwithstanding the fact that the adjustment had been lawfully and according to the express reservation in the contract itself restated by defendants. Suing, as it does in this action, upon the contract of 1905, the answer must be that there has been no violation of it by the defendants. If a mere protest or objection by plaintiff could keep the 1905 contract in force notwithstanding the department’s action under the act of 1907, it is manifest that this right of adjustment expressly reserved in the contract could amount to nothing. The protest or objection to the change might go to the question of compensation as readjusted. It could not restore or keep in force the contract of 1905 if the department could make and did properly make the later adjustment. In other words, plaintiff could accept the readjustment, which was in effect a new offer, or it could refuse to carry the mails on the terms offered. It sought to claim that the contract of 1905 was still in effect, and, by protesting against the change, to reserve the right to so claim. We decided that said contract was not in effect, and that there was no violation by the defendants of that contract in making the new adjustment, and hence that the protest avails *438 nothing in this case. Eastern Railroad Co. case. By continuing the transportation of the mails under the restated offer of the department, the plaintiff either assented to the terms of the offer or there was no contract at all between the parties. Tex. & Pac. Ry. Co. case, 379. If it assented as under the terms of its protest and the Postmaster General’s reply, we think the more reasonable view to be that it did, there is, of course, an end of this case. If it be held that it did not assent, then in the absence of an express contract its right of recovery would be based upon an implied obligation to pay the reasonable value of the services rendered as upon a quantum meruit. No such claim has been advanced in this case and there is no evidence upon which to base it. It is not shown that the weights of the mails were greater or less than those found in 1905, and no presumption can be indulged as to that fact. If the price fixed in 1905 were attempted to be used in case the weights in 1907 were shown as evidence of what was a fair or reasonable price for the new weights we would be confronted with the condition stated in the Postmaster General’s letter to plaintiff’s general attorney relative to the terms upon which the service could be continued. Plaintiff alleges that it had four-year contracts, and sues to recover the amounts it would have received under their terms less what it was paid. It appears, however, that the orders and notices under the act of 1907 were issued on September 12, 1907. The plaintiff was paid for the quarter beginning July 1 and ending September 30, 1907, at the rates stated in the readjusting orders and notices. We think it was entitled to receive the rates fixed by the 1905 orders until they were changed by the Postmaster General as directed by the act of 1907, and thereafter to be paid under the new rates. The difference between the two rates up to September 12 was $698.39, and for this difference plaintiff should have judgment. As to the balance of its claim it is not entitled to recover under the principles stated in the Eastern Railroad case.
Barney, Judge, and Downey, Judge, concur.
Booth, Judge, not sitting.